[Civ. No. 4802. First Appellate District, Division One.—April 17, 1924.]

THOMAS G. KNIGHT et al., Plaintiffs and Respondents, v. BENJAMIN L. MARKS et al., Defendants and Respondents; JOSEPH C. BIANCHI, Defendant and Appellant.

[1] LEASES — DEPOSIT AS SECURITY — INVALID LIQUIDATED DAMAGES PROVISION—SATISFACTION OF UNPAID RENT.—Where a lease provides that the lessee shall furnish a specified sum of money "as security for performance of the covenants in this lease contained on his part to be performed," which sum shall be deposited in a designated bank in the names and for the joint account of the lessor and the lessee, "and that the same shall there remain . . . during the term herein prescribed, provided that in the event that the lessee shall fail at any time to pay any installment of rent herein provided, or shall fail to observe or perform any of the covenants herein prescribed, then and in that event the lessor may withdraw from the said account the entire sum . . . as

1. Deposit by tenant to secure performance of stipulations of lease as penalty or liquidated damages, note, 19 **Ann. Cas.** 1128; see, also, 8 **Cal. Jur.** 858; 8 **R. C. L.** 576.

66 Cal. App.—38

agreed liquidated damages for breach of said covenants or covenant," and that any balance remaining after the expiration of the lease shall be returned to the lessee, the deposit so made can be applied in satisfaction of unpaid rent, notwithstanding the "liquidated damages" provision is invalid.

[2] ID.—TITLE TO DEPOSIT—LOAN BY THIRD PARTY—ALTERATION OF LEASE.—In this action to recover unpaid rents under said lease, and to have said deposit applied in payment thereof, although the evidence was conflicting, there was ample evidence to sustain the finding of the trial court to the effect that the money so deposited by the lessee was loaned to him by a third party and that, under the terms of the loan and of the agreement between the lessee and said third party with reference thereto, the title to the money passed absolutely to the lessee; and where the lessor did not have any knowledge of the agreement between the lessee and said third party whereby the money so loaned was immediately assigned to said third party as security for the repayment of the loan, and did not know that said third party was, or claimed to be, a surety for the lessee with respect to the money, the act of the lessor in subsequently agreeing to a material alteration of the lease did not operate to release her claim to the money so deposited.

(1) 36 C. J., p. 298, sec. 1069.   (2) 32 Cyc., p. 39.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. Clark Sargent for Appellant.

Peter A. Breen and Percy E. Towne for Plaintiffs and Respondents.

St. SURE, J.—This is the second appeal in this case. The action was brought to recover money claimed to be due to the plaintiffs' testatrix upon a lease executed by her to Benjamin L. Marks on October 22, 1908. Plaintiffs sought to obtain liquidated damages for the nonpayment of rent, and to forfeit a deposit held by the German Savings and Loan Society as security. The cause was first tried by a jury, and upon the verdict judgment was rendered in favor

of plaintiffs and against Marks for the sum of twenty-nine hundred dollars, and against Bianchi and the German Savings and Loan Society for the sum of $11,222.87. From this judgment the defendant Joseph C. Bianchi appealed. The supreme court reversed the judgment upon the ground that the breach of the lease complained of being merely nonpayment of rent, plaintiffs were not entitled to liquidated damages under section 1670 of the Civil Code. (*Knight* v. *Marks,* 183 Cal. 354 [191 Pac. 531].) Upon the filing of the *remittitur* in the court below, plaintiffs amended their complaint and upon the second trial made no claim to liquidated damages, but claimed that the deposit was a general security for the lease, and that they had the right to apply it in satisfaction of unpaid rent.

Defendant Bianchi set up six special defenses in his answer. The first is to the effect that the money deposited was, at the time of the deposit, the property of C. D. Bianchi; that Mrs. Knight had been informed prior to and at the time of the deposit that the money deposited was the property of Bianchi, and that it was furnished by Bianchi for the purpose of making the deposit, and that it was only pledged by Bianchi as security for the obligations of Marks, and that Marks had no other interest in it. The second defense pleads a judgment in an action pending in the superior court and numbered 56,400, wherein Bianchi was plaintiff and B. L. Marks and the German Savings and Loan Society were defendants. The third defense is a narration of the various provisions of the lease secured by the deposit. The fourth defense alleges that by an executed oral agreement between these plaintiffs, as executors of the will of Mrs. Knight, and Marks as lessee, made on or about the first day of January, 1916, the rent under the lease was reduced from one thousand dollars to seven hundred dollars per month, and that all rental due under the lease has been paid. The fifth defense is that the judgment upon the former trial is final and bars the further prosecution of this action. The sixth defense alleges that defendant Marks, with the written consent of plaintiffs, and without the consent of defendant Joseph C. Bianchi, assigned the lease to the Central Garage Company, and that said assignee took possession of and occupies the premises as tenant of plaintiffs and as assignee of Marks.

The trial court found that the money deposited was loaned to Marks by C. D. Bianchi, and that at the time of the deposit Marks was the owner thereof; that it is not true that Mrs. Knight had been informed that the sum deposited was the property of C. D. Bianchi, nor that it was furnished by Bianchi as security for the obligations of Marks under the lease, nor that Marks had no other interest therein; that it is not true that the money was pledged by C. D. Bianchi as security for the obligations of said Marks under the lease, or otherwise.

The trial court further found that Serena H. Knight was not a party to nor interested in said action in the superior court, numbered 56,400, and that the said action did not in any manner or to any extent affect or alter the right, title or interest of said Serena H. Knight in or to said fund.

The trial court further found that the allegations of the fourth defense are not true, and as to the fifth defense, it was found that the judgment recovered in the former trial is not final nor a bar, as said judgment has been reversed and set aside by the supreme court.

It was further found that the allegations contained in the sixth defense are untrue.

Judgment was given in the trial court in favor of the plaintiffs and against the defendant Marks for the sum of $16,400, unpaid rent, and $200 attorneys' fees as provided in the lease. The judgment further declared that the defendant Bianchi had an interest in the deposit, subject to the right of plaintiffs to apply the deposit and accrued interest in satisfaction of the judgment against Marks, and provided that any balance of the deposit remaining after the satisfaction of the judgment against Marks should be paid to Bianchi. From this judgment the defendant Bianchi alone appeals.

The appellant contends first, that as the supreme court has held that the provision in the lease for the application of the deposit to the payment of liquidated damages is void, the security cannot be taken for any other purpose; second, that the ruling of the lower court that the $8,000 was loaned by C. D. Bianchi to Marks cannot be upheld because delivery of the money to the debtor is necessary to constitute a loan, and no such delivery was shown; third, that the deposit in the German Bank was a pledge; and

fourth, that when C. D. Bianchi furnished Marks with the money with which to make the deposit, the former became a surety and was discharged when Mrs. Knight and Marks entered into the contract of May 13, 1912, modifying the lease by extending the term and making other changes.

The facts on this appeal and those presented on the first appeal, are almost identical. We quote and adopt the following clear and succinct statement from the opinion of Mr. Justice Shaw in *Knight* v. *Marks*, 183 Cal. 354 [191 Pac. 331] : ''The lease embraced property upon which the lessor agreed to erect a building in accordance with plans and specifications annexed thereto. . . . It was for the term of ten years, beginning thirty days after the completion of the building. The total rental was one hundred and twenty thousand dollars, payable in monthly installments of one thousand dollars each on the first day of each month, and Marks was to pay two hundred dollars as attorneys' fees in any action by the lessor against the lessee for a breach of any covenant of the lease. It provided that the lessee should furnish eight thousand dollars as security for the performance of the covenants on his part, which sum should be deposited in the German Savings and Loan Society in the names and for the joint account of the lessor and lessee, there to remain with such interest as should accumulate thereon, provided that in the event of failure to pay rent or other breach of covenant by Marks, the 'lessor may withdraw from the said account the entire sum, together with the accumulated interest, as agreed liquidated damages for the breach,' and that upon the termination of the lease by expiration of time or otherwise, any balance of the money and interest so on deposit and not applied to the claims of the lessor, should be returned to the lessee. . . . The evidence showed that at the time the money was deposited, C. D. Bianchi, as a loan to Marks for the purposes of said lease, gave him a check for eight thousand dollars to be used in making said deposit; that the check was indorsed by Marks and transferred to the bank, and that the deposit was, by that means, effected. Upon the deposit being made, Marks, in writing, assigned all his interest therein to C. D. Bianchi 'subject to the lien thereon of said Serena H. Knight,' under the lease, as security for the re-

payment of said sum to Bianchi by Marks, and Marks therein expressly promised to repay the same.''

[1] Appellant contends that the entire clause of the lease under which the deposit was made is void because that clause contains a provision for liquidated damages; and in this connection it is urged that the supreme court on the first appeal (*Knight* v. *Marks, supra*) held that the provision in question was void *in toto*. The provision in question reads as follows: ''It is further covenanted and agreed by and between the parties that the lessee shall furnish the sum of eight thousand dollars ($8000) in cash, as security for the performance of the covenants in this lease contained on his part to be performed, and that the said money shall be deposited in the German Savings and Loan Society, in the names and for the joint account of the lessor and the lessee herein above named, and that the same shall there remain, together with such interest as may accumulate thereon, during the term herein prescribed, provided that in the event that the lessee shall fail at any time to pay any installment of rent herein provided, or shall fail to observe or perform any of the covenants herein prescribed, then and in that event the lessor may withdraw from the said account the entire sum, together with the accumulated interest, as agreed liquidated damages for breach of the said covenants or covenant. At the expiration of the term of this lease or the sooner termination thereof by agreement, and not otherwise, any balance of said moneys which may not have been applied to the claim of the lessor as hereinabove provided, shall be returned to the lessee with such interest as may have accumulated.''

A careful reading of the decision on the former appeal discloses that the supreme court did not hold that the entire clause above quoted was void. The supreme court said ''the only breach of the covenants of the lease here in question that is alleged is the failure to pay the stipulated rent,'' and ''this action was merely for the rent due and the stipulated damages.'' The supreme court held ''it could not be difficult or impracticable to fix the damages in such a case. It was a breach of an obligation to pay money only and the damages was 'the amount due by the terms of the obligation, with interest thereon.' (Civ. Code, sec. 3302.) The parties cannot overcome this objection in

such a case by any provision in the contract itself, for such a provision is expressly declared to be void. (Civ. Code, sec. 1670; *Green* v. *Frahm,* 176 Cal. 262 [168 Pac. 114]; *Jack* v. *Sinsheimer,* 125 Cal. 564 [58 Pac. 130].) It follows that the plaintiff was not entitled to anything as liquidated damages for the breach of contract alleged, and that the verdict and judgment are, to that extent, without support in the law and evidence.''

Appellant approves the maxim that a contract should be construed to make it valid rather than void, but argues that ''when the court says that the 'provision' is void, it does not mean merely the words 'liquidated damages' but all of the context which is tributary to those words.''

Our attention has not been called to any authority which gives to section 1670 of the Civil Code a construction contrary to that indicated in *Green* v. *Frahm,* 176 Cal. 259 [168 Pac. 114], and *Knight* v. *Marks, supra,* the opinions in both cases being delivered for the supreme court by the same learned justice. In *Green* v. *Frahm* a clause in a lease similar to the clause in the lease under discussion here was under consideration, and there the court held that the *part* of the clause attempting to fix liquidated damages must be treated as a void provision and disregarded entirely. The conclusion reached by the supreme court on the first appeal of this cause is quite plain; we repeat it: ''It follows that the plaintiff was not entitled to anything *as liquidated damages for the breach of contract alleged,* and that the verdict and judgment are, *to that extent,* without support in the law and evidence.'' (Italics ours.) This language admits of no such construction as appellant seeks to place upon it. We think that the provisions of the lease may be enforced disregarding the attempt to fix liquidated damages in case of breach. The deposit was a general security for the lease and could be applied in satisfaction of unpaid rent (*Green* v. *Frahm, supra*). In line with such view we are constrained to say that, in our opinion, there is nothing in the lease which is against public policy.

[2] The further contentions of appellant that the finding of the trial court that the $8,000 was loaned by C. D. Bianchi to Marks cannot be upheld because delivery of the money was not shown; that the deposit was a pledge; and that when C. D. Bianchi furnished Marks with the money

with which to make the deposit, the former became a surety, will be considered and disposed of together.

On the first appeal the supreme court held that at the time the deposit was made the money therefor was loaned by C. D. Bianchi to Marks, and that "by the terms of the agreement and of the loan, the title to it passed absolutely to Marks."

The evidence before us shows that immediately after the deposit of $8,000 was made C. D. Bianchi and Marks entered into an agreement which recited, among other things, "And whereas, the party of the second part herein (C. D. Bianchi) has loaned to said party of the first part herein (Marks), the said sum of eight thousand ($8,000) dollars, for the purposes as set forth in said lease, . . ." This agreement, made on the day of the deposit, is convincing evidence as to the understanding between Marks and Bianchi relative to the ownership of the $8,000. That Mrs. Knight was not a party to the agreement, or did not know of it does not detract from its value as evidence of the nature of the transaction between Marks and Bianchi. It is true that appellant, upon the second trial, offered testimony by Marks to show knowledge on the part of Mrs. Knight that Marks was going to obtain the money for deposit from Bianchi. But such additional evidence merely accentuates an existing conflict which makes conclusive the finding of the trial court in the premises. Appellant claimed on the first appeal, as he claims here (see *Knight* v. *Marks, supra*), "the absolute and immediate right to the fund, on the ground that by the terms of an alleged agreement between Mrs. Knight, Marks and C. D. Bianchi at the time the deposit was made, it was understood between them that said Bianchi should deposit the money as security for the performance by Marks of his obligations under the lease, and consequently that said Bianchi and the fund he so deposited stand in the relation of a surety for Marks to Mrs. Knight for such performance. It is claimed, further, that in May, 1912, after the lease had run nearly three years, Mrs. Knight and Marks made an agreement in writing constituting a material alteration of the terms of the lease, so far as the obligations of Marks thereunder were concerned, which alteration it is argued operated to release the fund and transfer the same to Bianchi as the absolute

owner thereof under his assignment from Marks. It does not appear that Mrs. Knight had any knowledge of the terms of the agreement between C. D. Bianchi and Marks whereby the money was loaned to Marks for the purpose of making the deposit, and was immediately assigned by Marks to Bianchi as security for the repayment to Bianchi of the money so loaned by him to Marks. By the terms of the agreement and of the loan, the title to it passed absolutely to Marks. Mrs. Knight was not informed that the right of Marks thereto, such as it was, had been pledged to Bianchi for the repayment of the loan to him by Marks. The evidence does not show that she knew that Bianchi was, or claimed to be, a surety for Marks with respect to this money. Consequently, the alteration of the lease, even if there were such alteration, did not operate to release her claim to the money so deposited. It may be added that the agreement, which it is claimed changed the terms of the lease, merely gave the consent of the lessor to the lessee to make some alterations in the premises which he desired to make and thereafter to use the premises as a garage instead of a stable. Prior to that time he had been using it as a stable. There was no covenant in the original lease which restricted the lessee's right to use the premises for anything other than a stable. We do not perceive how the consent of the lessor to the proposed alterations operated in any respect to change the obligations of Marks for which the money was deposited as security" (*Knight* v. *Marks, supra*).

Believing, as we do, that the sum of $8,000, deposited as security for the performance of the covenants of the lease, was loaned by C. D. Bianchi to Marks, and that the latter had title to the money at the time of the deposit; and that the findings of the trial court are supported by the evidence and the law, we deem further discussion unnecessary.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 16, 1924.

All the Justices concurred.