[Civ. No. 18523.   First Dist., Div. One.   Jan. 26, 1960.]

L. E. GARCIA, Appellant, v. AUGUST MERLO et al.,
Respondents.

Pray & Cali and Stephen H. Pray for Appellant.

Joseph A. Bonacina for Respondents.

BRAY, P. J.—Plaintiff appeals from a judgment in favor of defendants supporting the latter's failure to pay certain money under levy of a writ of execution.[1]

## QUESTION PRESENTED

At the time of the levy of execution were defendants indebted to plaintiff's judgment debtor?

## FACTS

March 14, 1955, in an independent action, plaintiff recovered judgment against Casas Bonitas, Inc., for principal, interest and costs totaling $2,536.13. Defendants in 1954 entered into two building construction contracts with Casas Bonitas, Inc., a corporation, under which the latter was to construct for defendants two duplexes, for agreed prices to be paid in installments. The final payment under each contract was to be $2,309.40, payable 35 days after completion of the particular duplex. February 4, 1955, notice of completion of both duplexes was recorded. To finance the construction of the duplexes, defendants borrowed moneys from the Sunnyvale branch of the Bank of America. The bank held the moneys in a building and loan construction account. When payments were to be made under the contracts defendants would sign an order directing the bank to draw its check against the said account payable to Casas Bonitas. Defendants had opened an escrow account with the Peninsula Title and Guaranty Company. The title company had reported mechanics' liens of record against defendants' properties in the sum of $2,562.32. Certain other creditors had filed with the title company claims for work and labor on the duplexes totaling $1,976. These claimants had not filed liens (the time for filing liens had expired), but requested payment of their claims by the title company. March 16, 1955, defendants instructed the bank to pay the final payments under the contracts to the title company. On that day the bank transmitted to the title company a check in the sum of $2,562.32 payable to the latter. March 22, the bank transmitted to the title company a check for $1,976, payable to the latter. March 16, defendants instructed the title company that it would receive the above mentioned checks representing the balance of the loan funds due defendants and instructed the title company to pay the aforementioned liens and bills.

---

[1]Bank of America N. T. & S. A. was also a party defendant, and judgment in its favor was entered. Plaintiff did not appeal therefrom.

March 17, writ of execution on plaintiff's judgment against Casas Bonitas was served upon defendants, attaching all moneys belonging or debts owing to Casas Bonitas. Defendants replied to the sheriff "No funds due." The execution was returned partially satisfied from other sources, leaving a deficiency of $2,040.44. Later plaintiff instituted supplementary proceedings against defendants who denied any indebtedness to Casas Bonitas at or from the time of the levy. The total amount of the two checks received by the title company was used by it in paying the mechanics' liens and claims above mentioned. This total represented the balance of the payments due under the construction contracts except for $80.48. From this sum the bank credited defendants' account $63, and paid the title company $17.48.

### Indebtedness

Plaintiff contends that on March 17, the date of the levy, defendants were still indebted to Casas Bonitas under the construction contracts, notwithstanding that on March 16 defendants had instructed the bank to pay the final payments due Casas Bonitas to all claimants for work done on the buildings who had filed their claims with the title company whether secured by mechanics' liens or not, and that the bank on that day had drawn the checks payable to the title company. Plaintiff contends that Casas Bonitas never authorized these payments, and that as the payments made by the title company were not made until five days after the levy on defendants, they were still indebted to Casas Bonitas for the final payments under the contract. The title company escrow, says plaintiff, was not an irrevocable escrow as the company was acting on the unilateral instructions of defendants only.

Paragraph 5 in each of the construction contracts provided: "Contractor shall pay promptly all valid bills and charges for material, labor or otherwise in connection with or arising out of the construction of said structure and will hold owner of the property free and harmless against all liens and claims of lien for labor and material, or either of them, filed against the property or any part thereof, and from and against all expense and liability in connection therewith, including, but not limited to court costs and attorney's fees, resulting or arising therefrom. Should any liens or claims of lien be filed for record against the property, or should owner receive notice of any unpaid bill or charge in connection with the construction,

contractor shall forthwith either pay and discharge the same and cause the same to be released of record, or shall furnish owner with proper indemnity either by satisfactory corporate surety bond or satisfactory title policy, which indemnity shall also be subject to approval of first lien holder.'' No indemnity was furnished defendants by Casas Bonitas.

The court found that at the time of the levy defendants had no moneys in their control belonging to Casas Bonitas; that Casas Bonitas was in default under its contracts with defendants in that they had failed to discharge all claims and obligations under the contract and that the funds transmitted by defendant bank were used to discharge such obligations.

Both parties agree that the test to be applied is whether on March 17, when the writ was served on defendants, the latter had any moneys or debts due or owing to Casas Bonitas. Plaintiff concedes that under the contract, the construction loan and the instructions to the title company, the claimants who had mechanics' liens of record, had prior and superior rights to plaintiff in $2,056.48, the total amount of such claims.

However, plaintiff contends that as to the balance of $1,976, his rights under the levy were superior to the claim of those furnishing labor and materials who did not file mechanics' liens. This contention overlooks the true intent of the contract and the intent and purpose of the construction loan. Paragraph 5 of the contract contemplated that all claims for work and material on the buildings were to be paid whether liens were or were not filed. ''Should any liens or claims of lien be filed for record against the property, *or should owner receive notice of any unpaid bill or charge in connection with the construction,* contractor shall forthwith pay and discharge the same . . . or shall furnish owner with proper indemnity . . .'' (Emphasis added.) While the contract did not expressly provide that the owner could pay such claims, it does show the obligation of the contractor to pay them. This, coupled with the fact that the contractor knew that the moneys which the bank was advancing defendants were solely for the purpose of paying for the construction of the buildings, plus the implied acquiescence of the contractor, clearly shows that the court was right in holding that when defendants instructed the bank to pay the moneys in the construction fund to the title company for distribution to all the construction creditors, and the bank drew the checks against the loan account, such payments were in the spirit of the contract and defendants

were no longer indebted to Casas Bonitas, except in the sum of $63.[2]

■ Although on March 16, the day before the levy and the day upon which defendants instructed the bank to pay the title company $4,538.32, the bank only delivered one check to the title company, it drew both checks that day and charged defendants interest from that day. The record is not clear concerning the nature of, or parties to, the transaction or escrow whereby the title company paid off both secured and unsecured creditors of Casas Bonitas. Apparently Casas Bonitas did not instruct the title company in the matter. However, the court could reasonably infer that it impliedly consented to defendants' interpretation of the contract as giving defendants the right to pay construction claims, as Casas Bonitas at no time made demand upon defendants or the title company for the final payment provided in the contract, nor even for the $63 balance left after paying the claims, which amount the bank finally credited to defendants. Apparently also Casas Bonitas surrendered its claim for payment. The title company file contains a release of lien rights by Casas Bonitas against the property upon which the duplexes were built. Thus it cannot be said as a matter of law that the deposit with the title company was of the unilateral type which would have permitted defendants to withdraw it.

Moreover, the court properly found that Casas Bonitas was in default in failing to discharge all claims and obligations under the building contracts and therefore did not have an actionable demand against defendants. ■ A judgment creditor by a levy of execution stands in no better position as against the judgment debtor's debtor, than does the judgment debtor. A creditor's suit will not lie to reach assets for which the judgment debtor himself has not an actionable demand and which he could not recover in an action in his own name. (*Booge* v. *First Trust & Sav. Bank* (1944), 64 Cal.App.2d 532 [149 P.2d 32]; *Depner* v. *Joseph Zukin Blouses* (1936), 13 Cal.App.2d 124 [56 P.2d 574].)

One minor matter remains to be considered. As stated, the difference between the moneys in the construction loan and those needed to pay off the construction claims is $63. This

---

[2]The excess over the two checks drawn by the bank to the title company and the amount of the construction loan was $80.48. Of this sum the bank made a check to the title company for $17.48. Apparently this was used to discharge mechanics' liens, for in the title company file appear two slips showing receipt of $9.00 and $8.48 respectively and containing a notation ''Funds advanced for Liens.''

sum at the time of the execution levy was due Casas Bonitas from defendants. For some reason the bank returned this to defendants. It should have been paid plaintiff under his levy. Therefore the judgment will have to be modified to that extent.

Plaintiff is awarded judgment against defendants in the sum of $63. In all other respects the judgment in favor of defendants is affirmed. Defendants will recover costs.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied February 19, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 23, 1960.